**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>RAYMOND D. ANDERSEN,<br><br>        Debtor. | No. 05-51161 |
| NATIONWIDE NORTHWEST<br>LIMITED PARTNERSHIP,<br><br>        Plaintiff,<br><br>vs.<br><br>RAYMOND D. ANDERSEN,<br><br>        Defendant. | Adversary No. 06-4044<br><br>MEMORANDUM RE DEFAULT |

Nationwide Northwest Limited Partnership filed this adversary proceeding against defendant debtor Raymond D. Andersen, seeking a determination that his obligation under the installment sale contract is nondischargeable under § 523(a)(2)(A)[1] of the Bankruptcy Code (11 U.S.C.). Mr. Andersen purchased a Jeep Cherokee from a car dealer whose position Nationwide apparently took over.

---

[1]
Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, as the case from which the adversary proceeding arises was filed before its effective date (generally 17 October 2005).

(06-4044 - Nationwide NW LP vs Andersen)
MEMORANDUM RE DEFAULT - 1 of 5

1    Andersen did not answer, and I entered an Order of Default (docket

2 no. 6).   Nationwide thereafter sought entry of a judgment of

3 nondischargeability.  I declined to enter that judgment, indicating by

4 letter (docket no. 13) that the proof appeared insufficient, and

5 inviting further briefing or a prove-up hearing.

6    Nationwide chose the latter, and that hearing was held 6 February

7 2007.  James Whitman, Nationwide's General Manager, testified by

8 telephone.  Exhibits A and B to his previous declaration (docket no.

9 17), defendant Andersen's credit application and the retail installment

10 contract, were admitted.  Because they are already in the record of this

11 adversary proceeding, no physical copies were marked or kept.

12    To establish nondischargeability under § 523(a)(2)(A), Nationwide

13 Northwest must prove:

14    the creditor must establish (1) that the debtor made a
     representation; (2) the debtor knew at the time the
15    representation was false; (3) the debtor made the
     representation with the intention and purpose of deceiving the
16    creditor; (4) the creditor relied on the representation; and
     (5) the creditor sustained damage as the proximate result of
17    the representation.

18 In re Apte, 96 F.3d 1319, 1322 (9th Cir. 1996) (citations omitted).

19    Having considered the evidence and the argument of counsel,

20 including Nationwide's post-hearing memorandum (docket no. 22), and even

21 overlooking disconnects, such as:

22    1.    The fact that whatever representations Mr. Andersen made were

23          to the car dealer, not Nationwide--he could be liable to

24          Nationwide if he knew or had reason to believe Nationwide was

25          going to rely on his representations, Restatement (Second) of

26

27

28 (06-4044 - Nationwide NW LP vs Andersen)
   MEMORANDUM RE DEFAULT - 2 of 5

1            <u>Torts</u> § 533 (1977); <u>In re Maldonado</u>, 228 B.R. 735, 738–39 (9th

2            Cir. BAP 1999), but there is no evidence one way or the other;

3      2.     It is not clear that Nationwide advanced any credit pre-

4            bankruptcy (the application was made on 11 October 2006, the

5            bankruptcy was filed on 12 October 2006); and

6      3.     Nationwide itself characterizes its transaction as the

7            purchase of the loan made by the car dealer (paragraph 3,

8            Whitman Declaration);

9 Nationwide's case fails.

10      There is no evidence of any oral representations of any sort (no

11 one who took part in the initial transaction between Andersen and the

12 car dealer testified), and there are no written representations in

13 Exhibit A except those respecting his employment. Notably, there is <u>no</u>

14 information about his credit history or financial status, and the

15 questions about bankruptcy, judgments, etc., are unanswered. Nationwide

16 relied on a credit report it obtained, and made its credit decision on

17 that information.

18      Nationwide argues from the timing that at the time of his purchase

19 of the Jeep Cherokee Mr. Andersen must have known he intended to file

20 for bankruptcy, and impliedly represented his intention to continue to

21 be legally bound by the contract, which representation he breached by

22 failing to reaffirm. In fact, his statement of intention (Official

23 Form 8 filed with his petition in the main case, of which I take

24 judicial notice) indicates "debtor will retain collateral and continue

25 to make regular payments." Of course, as Mr. Andersen filed his

26 bankruptcy case before the effective date of BAPCPA, that "third option"

27

28 (06-4044 - Nationwide NW LP vs Andersen)
MEMORANDUM RE DEFAULT – 3 of 5

1  was available in this Circuit.  In re Parker, 139 F.3d 668 (9th Cir.
2  1998).

3  Review of the docket in the main case also discloses first, that
4  Mr. Andersen did not seek to exempt the Jeep, and second, that
5  Nationwide evidently failed to perfect its security interest, as the
6  trustee's motion to sell the vehicle (docket no. 11) indicates the
7  trustee was not aware of any liens, and the docket discloses no
8  objection from Nationwide.  I ultimately entered an order authorizing
9  the auction of the vehicle (docket no. 23).

10  But even the cases Nationwide cites in its post-hearing brief do
11  not support its position:  the two cases quoted (In re Green, 296 B.R.
12  173, 180 (Bankr. C.D. Ill. 2003) and In re Schnore, 13 B.R. 249 (Bankr.
13  W.D. Wis. 1981) speak in terms of intent to pay, rather than intent to
14  be bound, and the third case, In re Wright, 8 B.R. 625 (Bankr. S.D. Ohio
15  1981) was decided on the basis of the debtor's knowing "at the time she
16  made the subject purchases that she was not able to pay for the items in
17  the future . . . (and) without any sincere intention to pay for them."
18  None of these cases, credit card cases all, holds that a debtor
19  impliedly represents an intent to continue to be bound under the
20  contractual arrangement. And Ninth Circuit law is that the debtor makes
21  an implied representation of an intent to perform the contract by
22  repaying the amount charged.  In re Anastas, 94 F.3d 1280, 1285 (9th
23  Cir. 1996) (also a credit card case).

24  In this case there is simply no evidence that, at the time he
25  purchased the Jeep, Mr. Andersen did not intend to pay for it.  Because
26  it was not exempt, and because Nationwide had not perfected its security
27
28  (06-4044 - Nationwide NW LP vs Andersen)
    MEMORANDUM RE DEFAULT - 4 of 5

1  interest, the trustee sold the Jeep, a fact which would obviously have

2  some impact on Mr. Andersen's willingness to continue paying for it.  In

3  short, I cannot find that Nationwide has proven that, at the time Mr.

4  Andersen purchased the Jeep, he did not intend to pay for it in

5  accordance with the terms of the retail installment contract.

6      Nor is it evident that Nationwide's reliance on any implied

7  representation was justified.  It went ahead with the transaction,

8  notwithstanding Mr. Andersen's failure even to answer the questions

9  respecting bankruptcy, judgments, etc., on his credit application

10  (Exhibit B).

11      Accordingly, the debt is not excepted from discharge, and I will

12  enter judgment for Defendant Raymond D. Andersen.

13

14      DATED: 8 March 2007.

15

16  _____

17  Philip H. Brandt
    U. S. Bankruptcy Judge

18

19
CERTIFICATE OF SERVICE:
20  I CERTIFY I SERVED COPIES OF
    THE FOREGOING (VIA U.S. MAIL,
21  FACSIMILE, OR ELECTRONICALLY) ON:

22
     Laurin S. Schweet                    Raymond D. Andersen
     Email: laurins@schweetlaw.com        1411 McMillan
23                                         Sumner, WA 98390

24
    DATE: March 8, 2007
25
    BY:    /s/ Juanita C. Kandi
26
27

28  (06-4044 - Nationwide NW LP vs Andersen)
    MEMORANDUM RE DEFAULT - 5 of 5